UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JABARI REGAINS, #600539,

        Plaintiff,

v.

REBECCA HORROCKS,

        Defendant.
_____/

Case No. 2:21-cv-72

Hon. Jane M. Beckering
U.S. District Judge

## REPORT AND RECOMMENDATION

### I.  Introduction

This Report and Recommendation (R&R) addresses Defendant Prison Counselor (PC) Rebecca Horrocks's motion for summary judgment based on Plaintiff's failure to exhaust his administrative remedies. (ECF No. 16.)

Plaintiff — state prisoner Jabari Regains — filed suit pursuant to 42 U.S.C. § 1983 on April 14, 2021. In his verified complaint, Regains asserts that while he was confined at Marquette Branch Prison (MBP) in Marquette, Michigan, PC Horrocks retaliated against him, in violation of his First Amendment rights. Specifically, Regains says that PC Horrocks barred his access to his phone and JPay[1] after he complained about the conditions in his housing unit. (ECF No. 1, PageID.4-8.) Regains further claims that he filed a grievance against Horrocks for retaliating against him, but that the Step I Respondent denied his grievance as non-grievable

---

[1] JPay is the email system utilized by prisoners in MDOC custody.

and directed him to raise his concern at the Warden's Forum. (*Id.*, PageID.9.) Regains says he did not raise his concern at the Warden's Forum because he was in administrative segregation at the time. (*Id.*)

Horrocks now moves for summary judgment, asserting that Regains did not properly exhaust his administrative remedies. (ECF No. 17.) More specifically, Horrocks argues that Regains was required to raise his issues at the Warden's Forum after his grievance was rejected. (*Id.*, PageID.76.) Horrocks asserts that MDOC policy provides a procedure for prisoners in administrative segregation to raise their issues at the Warden's Forum, and that Regains failed to utilize that process. (*Id.*) Regains did not respond.

The undersigned respectfully recommends that the Court deny PC Horrocks's motion for summary judgment because Regains's grievance claimed violations of his specific constitutional rights, and the Warden's Forum was not the appropriate avenue to exhaust those claims. Therefore, Regains's claim was exhausted when the Step I Respondent rejected his grievance as non-grievable.

## II.   Factual Allegations

Regains says that on September 13, 2020, a fight broke out in one of the day-rooms at the Chippewa Correctional Facility (URF) in Kincheloe, Michigan, where he was incarcerated. (ECF No. 1, PageID.3.) In response to the fight, URF staff deployed their tasers, hitting one of the inmates in the face and rendering him unconscious. (*Id.*) This action triggered a widespread disturbance in the housing unit. One of the results of this disturbance was Regains's transfer to MBP. (*Id.*, PageID.3-4.)

Regains says that upon his transfer to MBP, he was placed in a unit that had been closed for several years but was recently reopened. (*Id.*, PageID.4.) According to Regains, the unit was unclean, which led him to request cleaning supplies for his cell on numerous occasions. (*Id.*) Regains also says that in October of 2020, inmates in his unit began testing positive for Covid-19. (*Id.*, PageID.5.) Because the inmates were not immediately removed from the unit, Regains was exposed to the virus, and ultimately tested positive himself. (*Id.*) In the meantime, MBP staff were not providing inmates with showers. (*Id.*)

Regains sent several communications to MBP staff regarding the conditions of his housing unit. (*Id.*) When he did not receive any responses to those communications, he filed a grievance. (*Id.*, PageID.6.) He also complained about the conditions to his family members, who contacted the MBP administration. (*Id.*) Regains says that a few days later, he was barred from making phone calls or accessing his JPay account. (*Id.*)

On November 5, 2020, Regains says that he asked PC Horrocks why he could not access his phone or JPay. (*Id.*, PageID.6-7.) Horrocks told Regains that he was on sanctions. (*Id.*, PageID.7.) When Regains asserted that he should still be able to access JPay and make phone calls once a week pursuant to recent directions from the MBP Warden, PC Horrocks allegedly told Regains that if he did not complain so much, he might still have access to his phone and JPay. (*Id.*) Horrocks further indicated Regains was barred from accessing his phone and JPay, in part, because he was involved in the disturbance at URF. (*Id.*) And Horrocks allegedly told Regains

3

that regardless of whether the Warden authorized once-a-week calls, she ran the unit. (*Id.*, PageID.8.)

### III. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[2] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

---

[2] If defendants move for summary judgment on the basis of exhaustion under the PLRA, and the court determines that there is a genuine issue of material fact, the issue need not be submitted to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015). Instead, the court may conduct a bench trial to resolve the issue. (*Id.*) In a bench trial on exhaustion, the defendants must show that the plaintiff failed to exhaust his administrative remedies by a preponderance of the evidence. *Id.* at 677 (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)) ("Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence."); *Richards v. Perttu*, No. 2:20-CV-76, 2022 WL 842654, at *1 (W.D. Mich. Mar. 22, 2022) (affirming a magistrate judge's ruling that the preponderance of the evidence standard applies in a bench trial on exhaustion).

When a non-movant fails to respond to a motion for summary judgment, which is the case here, the Court must "examine the movant's motion for summary judgment to ensure that he has discharged his initial burden." *Stough v. Mayville Cmty. Sch.*, 138 F.3d 612, 614 (6th Cir. 1998) (citing *Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991)).

## IV.  Exhaustion

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden—the plaintiff on a claim for relief or the defendant on an affirmative defense—his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter*

5

*v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). To properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 644 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at

737*)*. And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id*. When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

Michigan Dept. of Corrections (MDOC) Policy Directive 03.02.130 (effective March 18, 2019) sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to informally resolve a grievable issue within two business days of becoming aware of the issue, unless prevented by circumstances beyond his or her control. *Id*. at ¶ Q. If informal resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted informal resolution. *Id*. at ¶¶ Q, W. The inmate submits the grievance to a designated Grievance Coordinator, who assigns it to a respondent. *Id*. at ¶ W. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id*. at ¶ S (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten

7

business days of the response, or if no response was received, within ten days after the response was due. MDOC Policy Directive 03.02.130 at ¶¶ U, DD. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for medical care grievances. *Id.* at ¶ FF.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ U, HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II.

When the grievance procedures are not available because the issue presented is non-grievable, exhaustion those procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well-known proverb states, they cannot have their cake and eat it too."). However,

8

when other administrative remedies are available, the prisoner is required to exhaust those remedies prior to filing a federal lawsuit.

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id.* at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[3]

---

[3] In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id.* at 596. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

## V.     **Analysis**

Regains submitted grievance <u>MBP-20-11-1785-27B</u> on November 24, 2020. That Step I grievance is shown below.

> **MICHIGAN DEPARTMENT OF CORRECTIONS**
> **PRISONER/PAROLEE GRIEVANCE FORM**
> RECEIVED NOV 24 2020
> 4835-4247 10/94
> CSJ-247A
>
> Date Received at Step I: 11-24-2020   Grievance Identifier: MBP 2011 1101 7852713
> Marquette Branch Prison
>
> Be brief and concise in describing your grievance issue. If you have any questions concerning the grievance procedure, refer to PD 03.02.130 and OP 03.02.130 available in the prison Law Library.
>
> | Name (print first, last) | Number | Institution | Lock Number | Date of Incident | Today's Date |
> |---|---|---|---|---|---|
> | Jabari Regains | 600539 | MBP | C-2-35 | 11-10-20 | 11-15-20 |
>
> What attempt did you make to resolve this issue prior to writing this grievance? On what date? If none, explain why. I spoke with several officers and ARUS Horrocks directly
>
> State problem clearly. Use separate grievance form for each issue. Additional pages, using plain paper, may be used. Four copies of each page and supporting documents must be submitted with this form. The grievance must be submitted to the Grievance Coordinator in accordance with the time limits of OP 03.02.130. This grievance is being written on Rebecca Horrocks for deliberately retaliating by shutting off my jpay without notice or following P.D. 05.03.118 section PPP which states "The department may block a sender from transmitting electronic messages if the sender has repeatedly sent such messages in violation of this policy or for other reasons as approved by the CFA Deputy Director. The Department may similary block a prisoner from receipt of electronic messages if such messages have repeatedly been sent to the prisoner in violation of department policy or for other reasons as approved by the CFA Deputy Director. Notice of the block shall be sent to the sender or prisoner, as appropriate, within a reasonable time after the block is initiated. IF blocked, the sender and prisoner may continue to send/receive mail in accordance with this policy. The sender may appeal the block to the Warden." None of this has happened and the ARUS blocked my jpay from my family when she had no cause, also this was due to the fact that she had an verbal altercation with other inmates. Due to the fact that I'm in segregation this is my only form of receiving communication from my family because I'm also on LOP and can't use the phone. My jpay messages are supposed to be printed and delivered while I'm in segregation.
>
> Grievant's Signature: Jabari Regains
>
> RESPONSE (Grievant Interviewed?)  ☐ Yes  ☒ No   If No, give explanation. If resolved, explain resolution.)
>
> Your grievance is being rejected because you are grieving the content of PD 03.02.130 *Prisoner/Parolee Grievances* (E) "Grievances may be submitted regarding alleged violations of policy or procedure or unsatisfactory conditions of confinement which directly affect the grievant" which is a non-grievable issue according to PD 03.02.130 *Prisoner/Parolee Grievances*. It is not specific to you but rather the prison population as a whole. Grievance rejected according to policy.
>
> Respondent's Signature: G. Caren   Date: 11-24-2020
> Respondent's Name (Print): Glenn Caron   Working Title: Grievance Coordinator
> Reviewer's Signature: T-D   Date: 11/25/2020
> Reviewer's Name (Print): Tim Dahl   Working Title: A/ADW
>
> Date Returned to Grievant: 11-25-20   If resolved at Step I, Grievant sign here. Resolution must be described above.
>
> DISTRIBUTION: White, Green, Canary, Pink — Process to Step One; Goldenrod — Grievant

(ECF No. 1-4, PageID.20.)

Although this grievance complained that Horrocks had retaliated against Regains by blocking his access to his JPay, the Step I Respondent rejected the grievance because he viewed the grievance as a challenge to the content of a policy directive, which is a non-grievable issue. (*Id.*) In addition to returning the Step I form to Regains, the Grievance Coordinator provided Regains with a "Grievance Rejection Letter," which informed Regains that if he had concerns regarding the contents of a policy directive, he could direct comments to the Warden's forum. (ECF No. 1-4, PageID.21.) PC Horrocks now takes the position that Regains's failure to raise the issues outlined in his grievance at the Warden's Forum constitutes a failure to exhaust his administrative remedies. (ECF No. 17, PageID.76.) PC Horrocks did not provide the Court with authority in support of her position.

This Court addressed a similar situation in *Lopp v. Washington*, No. 1:19-CV-540, 2021 WL 3033266 (W.D. Mich. July 19, 2021). There, as here, the plaintiff's grievance had been rejected as non-grievable, and the respondent encouraged the plaintiff to raise his issues at the Warden's Forum. *Id.* at *1. The Court opined that the Warden's Forum may be the proper venue to exhaust claims challenging a prison policy or procedure. But the Court found that the plaintiff's claims did not in fact concern the contents of a policy or procedure. *Id.* at *1-2. Instead, the prisoner claimed that his specific constitutional rights had been violated, and the proper avenue for exhaustion was the grievance process. *Id.* at *2. However, because the Respondent rejected the plaintiff's grievance as non-grievable, the plaintiff was not

required to proceed through all steps of the grievance process to exhaust his claims. *Id.*

The undersigned finds that Regains has exhausted his retaliation claim for the same reasons set forth by the Court in *Lopp*. A review of grievance MBP-20-11-1785-27B demonstrates that Regains was grieving Horrocks for retaliating against him by cutting off his access to JPay. Regains then explained that this action violated MDOC Policy and his constitutional rights — not that there was a problem with the Policy itself. (ECF No. 1-4, PageID.20.) It seems likely that the Step I Respondent simply misread grievance MBP-20-11-1785-27B when he concluded that it challenged the content of MDOC P.D. 03.02.130. As such, the proper avenue for exhaustion was, as identified by Regains, the grievance process. But the Step I Respondent freed Regains of his duty to further pursue the grievance process when the Respondent rejected grievance MBP-20-11-1785-27B as non-grievable. Therefore, Regains exhausted his retaliation claim against PC Horrocks.

## VI. Recommendation

The undersigned respectfully recommends that the Court deny PC Horrocks's motion for summary judgment because Regains's grievance claimed violations of his specific constitutional rights, and the Warden's Forum is not the appropriate avenue to exhaust those claims. Therefore, Regains's claim was exhausted when the Step I Respondent rejected his grievance as non-grievable.

Dated:  March 30, 2022                                      /s/ *Maarten Vermaat*
                                                            MAARTEN VERMAAT
                                                            U. S. MAGISTRATE JUDGE

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).